LEGGATT, APPELLANT, *v.* PRIDEAUX, RESPONDENT.

[Submitted May 6, 1895.  Decided May 20, 1895.]

OFFICERS—*Justice of the peace—Illegal fees—Ignorance of the law.*—A justice of the peace collecting excessive fees is liable in an action for the statutory penalty without regard to any corrupt motive or intent in collecting them. His ignorance that the fees were illegal does not excuse him. Neither would the fact that the person paying the fees knew that that they were excessive and kept silent, nor the fact that upon discovery of the mistake he tendered back the fees, constitute any defense to the action.

SAME—*Illegal fees—Voluntary payment.*—Where the statute in such case imposes the penalty for receiving the illegal fees, the question as to whether payment by the litigant was voluntary or not, is immaterial.

*Appeal from Fifth Judicial District, Beaverhead County.*

ACTION to recover statutory penalty for collecting illegal fees. Judgment was rendered for the defendant on the pleadings by SHOWERS, J.   Reversed.

Statement of the case by the justice delivering the opinion.

This action (consisting of two actions consolidated) is brought by plaintiff under section 9, page 241, Laws 1891, against defendant, who was a justice of the peace, for recovery of ten times the amount of certain fees received by the justice, not specifically provided for by law.   The section referred to declares:   "That the fees and salaries in this act provided shall be all the compensation by law allowed such officers, for all services which they are required to or by law can perform as such officers.   Any such officers who shall receive any fee, or reward, or salary not specifically provided for by law, shall be liable to the county, state or persons paying the same for ten times the sum so paid to such officers, to be recovered by civil action, and shall be deemed guilty of a misdemeanor, and on conviction shall be fined in any sum not less than one hundred nor more than five hundred dollars, and shall be imprisoned in the county jail for a term of not less than thirty nor more than ninety days."

The defendant admitted the excessive charges, but relied

upon (1) ignorance of the law; (2) that plaintiff well knew that the fees were excessive, and wilfully kept silent, and permitted the said charge to be made for the bringing of this suit, when, if he had informed defendant of such excessive charge, defendant would have gladly reduced his charge to the legal limit; (3) that prior to a demand, he discovered the mistake, and immediately tendered the amount of the excessive charges, but plaintiff refused the same.

Plaintiff replied, denying any tender of the amount of illegal fees. Counter motions for judgment on the pleadings were made. The court sustained the defendant's motions, and granted judgment, dismissing plaintiff's complaint, and awarding costs to defendant. The action of the court in sustaining defendant's motion for judgment is assigned as error.

*W. S. Barbour* and *Smith & Word*, for Appellants.

Fees thus extortionately exacted can be recovered in a civil suit even before the officer has been convicted in a criminal action, and such statutes providing a penalty for extortion of illegal fees by officers are constitutional. (*Ming* v. *Truett*, 1 Mont. 322.) In the respondent's answer he admits the taking of the fees, as alleged in the complaint, but pleads in excuse thereof ignorance of the law. Such a plea is untenable and is no defense to the action. Ignorance of the law will not excuse the taking of illegal fees. (*Coats* v. *Wallace*, 17 Sargent & Rawle, 75; *People* v. *Monk*, 28 Pac. Rep. 1115; 3rd Greenleaf on Evidence, § 21; 11th Neb., 157; 8 N. W. Rep., 386.) The courts have no power to inquire into the policy of the law. The legislature enacts the law, and it is the duty of the courts to construe it, and if constitutional, to enforce it, regardless of the expediency. (*State of Nevada* v. *Parkinson*, 5 Nev. 17; Cooley's Constitutional Law, 197–201, 6th Edition.)

*Cullen & Toole*, for Respondent.

It cannot be successfully contended in view of our statute

requiring joint operation of act and intention and of act and criminal negligence to constitute an offence, that our legislature ever intended to disgrace a citizen for doing that which he honestly believed he had a right to do.   This proposition is sustained with much force in the following cases.   (*Cutter* v. *State*, 31 N. J. Law Rep. 125; *People* v. *Whaley*, 6 Cowen 661; *Commonwealth* v. *Shed*, 1 Mass. 228; *People* v. *Harris*, 29 Cal. 682; *State* v. *Gardner*, 5 Nev. 312.)   This action is brought under section 9 of an act entitled "An act concerning compensation of county, district and township officers." While the body of the act is constitutional, we contend that section 9 is not, because the title thereof makes no reference to a *"penalty"* or "punishment."   (§ 23, Article V., Const. of Montana.)

HUNT, J.—The first question presented is whether a justice of the peace who collects fees exceeding those allowed him by law, is liable in a civil action for a penalty of ten times the amount of such fees, without regard to any corrupt motive or intent in collecting them.   The facts of this case show an admitted violation of the letter of the law, and a *prima facie* liability under its provisions.   (*Lydick* v. *Palmquist*, 31 Neb. 300.)

That the justice of the peace believed he had a legal right to charge the fees he did, and acted in good faith in taxing and collecting the fees, constitute no defense.   It would be most dangerous to the welfare of society if an officer elected to administer the law could violate it to his own pecuniary advantage, and escape the consequences of his act by pleading ignorance of the statute he had violated.

That ignorance of the law is no excuse is a postulate of law, but, unless the maxim is upheld, there would be innumerable problems presented to courts, and he who knew the least might fare the best; or, as is said by the supreme court of California (*People* v. *O'Brien*, 96 Cal. 171) "the denser the ignorance the greater would be the exemption from liability."

The case is not one where there was a mistake of fact.   The

court of appeals of New York, in *Gardner* v. *People*, 62 N. Y.
299, say: "Such mistakes do not excuse the commission of
prohibited acts. The rule on the subject appears to be that in
acts *mala in se* the intent governs, but in those *mala prohibita*
the only inquiry is, has the law been violated?" (*People* v.
*Brooks*, 1 Denio 457; *Beckham* v. *Nacke*, 56 Mo. 546; *Com-
monwealth* v. *Emmons*, 98 Mass. 6; *Carr* v. *Trainor*, 36 Ill.
App. 587; *Roberge* v. *Burnham*, 124 Mass. 277; *People* v.
*Monk*, 8 Utah 35, 28 Pac. 1115.)

The receiving of the illegal fees is the gist of the wrong
under the statute, and, when such fees are deliberately accepted,
the law is violated, and the liability attaches.

No less eminent a judge than Chief Justice Gibson of Penn-
sylvania, in an early case (*Coates* v. *Wallace*, 17 Serg. & R.
75), wherein a justice of the peace was sued for a penalty in
having exacted illegal fees, wrote as follows: "The penalty
imposed by this act may be incurred by exacting fees which
are supposed at the times to be legally demandable. By the
very words of the prohibitory clause, the taking is the gist of
the offense. Ignorance of the law will not excuse in any case;
and this principle is applicable, and with irresistible force, to
the case of an officer selected for his capacity, and in whom ig-
norance is unpardonable. The very acceptance of the office
carries with it an assertion of a sufficient share of intelligence
to enable the party to follow a guide provided for him with an
unusual attention to clearness and precision. On any other
principle a conviction would seldom take place, even in cases
of the most flagrant abuse, for pretexts would never be want-
ing. Sound policy, therefore, requires that the officer should
be held to act at his peril; and we are of opinion that the ab-
sence of a corrupt motive, or the existence of an agreement by
the party injured, furnishes no justification for doing what the
law forbids."

The case of *State* v. *Gardner*, 5 Nev. 377, relied upon by
respondent, was a criminal action, where the defendant, who
confessedly had no criminal intent, was indicted and convicted
of a felony in violating a law for improperly issuing licenses.

A majority of the court held that a criminal intent was a necessary ingredient of the offense charged, which was a felony, not a misdemeanor. And the opinion, when scrutinized, is based upon the ground that in considering the fearful consequences imposed if a mere violation of the letter of the law would necessitate a conviction, it was impossible to believe that the general rules of the criminal law requiring an evil intent were to be ignored. The case therefore differs from the one at bar. We note, too, that the Nevada ruling is not generally approved of. The court of appeals of New York, in criticizing the opinion, say : " It is evident that a majority of the court struggled to relieve the defendant from a harsh punishment for a comparatively innocent act." (*Gardner* v. *People, supra.*) The supreme court of California also decline to follow it. (*People* v. *O'Brien, supra.*)

The defense of the silence of the appellant, Leggatt, in not informing respondent of the fact that his fees as justice were excessive, cannot obtain. The very statement of the proposition that an unsuccessful litigant is bound to advise the justice who had decided against him what the law is, illustrates the absurdity of the contention.

The respondent next argues that a tender back, when he discovered his error, should relieve him. We cannot agree with him. To so hold would be to practically nullify the whole object of the law by permitting officials who violate its provisions to escape the consequences by refunding, when their extortions were detected, or when they believed they were about to be detected. The effect would be to say to officials, "You may charge and retain all the illegal fees you can collect, and, if by chance you are discovered in taxing illegal sums, you need only refund to avoid all penalties for your errors or wrongs." This would not do. (*Turner* v. *Blount,* 49 Ark. 361, 5 S. W. 589.)

Finally, respondent says that the payment of the excessive fees by the appellant was a voluntary one, and for that reason he cannot prevail in this suit. We seriously doubt the correctness of the contention that a payment is voluntarily made

where a judgment is rendered and costs are taxed against a
party to a suit, and paid by him in obedience to a demand by
the justice who rendered the judgment, and who alone could
issue process to enforce its collection. (*Steamship Co.* v.
*Young,* 89 Pa. St. 186; *Insurance Co.* v. *Britton,* 8 Bosw.
148-155; *McKee* v. *Campbell,* 27 Mich. 497.) It is unneces-
sary to pass on the question, however, because we think the
doctrine of voluntary payment is not properly applicable to
this case. The statute of itself is too plain a guide. The re-
spondent, a justice of the peace, demanded and received ex-
cessive fees. The law was explicit in fixing his compensation,
but he violated it. The same statute which fixed his fees said
to him, "If you violate this law by receiving illegal and ex-
cessive fees, the person who pays them to you may recover ten
times the sum so paid to you; primarily as a penalty upon you,
and incidentally as a remedy to him." (*Lane* v. *State,* 47 N.
J. Law 362, 1 Atl. 476.)

We find nothing in the answer which demands any further
construction of the statute, the main objects of which are to
prevent extortion and imposition. The respondent pleads no
fraud or deception on the appellant's part, except that, in
order to bring this suit, appellant kept silent, and did not ad-
vise him what the law was. But, as said before, there is no
obligation upon a litigant to advise a magistrate what his offi-
cial fees are. He is naturally expected and bound to know
them himself; and where his charges exceed the amount the
law allows him he cannot escape the statutory responsibilities
imposed, either because his extortion was the result of his ig-
norance, or because the victim of his extortion was more
learned, yet failed to counsel him upon the law. It is possible
that the enforcement of the penalty in this case is a hardship,
and it may be that the severity of the law is great; but with
those matters we have not to do. The policy upon which the
statute is founded is none the less wholesome; and while, in
administering the law, cases occasionally arise which, under
certain circumstances, constrain courts to render harsh judg-
ments, yet, in the lapse of time, a due respect for the rigid

maintenance of sound principles will prevent the growth of systems of great wrong to the public generally. Being of the opinion that, as the pleadings stood when the counter motions were made, the plaintiff was entitled to judgment, it follows that the judgment of the district court must be reversed, and it is so ordered.

*Reversed.*

PEMBERTON, C. J. and DE WITT, J., concur.

